UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SUSAN REESE,

        Plaintiff,

   v.

BARTON HEALTHCARE SYSTEMS,

        Defendant.
_____/

NO. CIV. S-08-1703 FCD GGH

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter comes before the court on defendant Barton Healthcare Systems' ("Barton") motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) and motion to strike the request for punitive damages pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Plaintiff Susan Reese ("Reese") opposes the motion. For the reasons set forth below,[1] defendant's motions are DENIED.

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

**BACKGROUND**

Plaintiff Reese was hired by defendant Barton on or about June 16, 1997, as a lab assistant. (First Am. Compl ("FAC"), filed Sept. 24, 2008, ¶ 8.) Eventually, she became a Cardiac Ultrasound Technologist. (Id. ¶ 9.) Plaintiff alleges that the rigors of the job caused her to injure her shoulder and she became permanently disabled as a result of the injury. (Id. ¶ 10.) Specifically, plaintiff alleges that the injury substantially limits the major life activities of lifting, sleeping, and reaching and that she requires reasonable accommodations to perform her job duties. (Id.)

On or about May 2007, plaintiff gave defendant a note from her doctor, which stated that she should not be allowed to conduct more than 5 echo exams a day. (Id. ¶ 11.) From May 2007 to January 2008, defendant accommodated plaintiff's disability. (Id. ¶ 12.) Plaintiff alleges that subsequently, however, defendant refused to accommodate her disability, routinely pressing her to perform more than 5 echo exams a day. Tim Gilliam ("Gilliam") wrote her up for refusing to do more than her doctor's restriction, and she was suspended and eventually terminated for the same reason. (Id.)

Plaintiff alleges that beginning in January 2008, defendant tried to force plaintiff to quit and began harassing her and making it difficult to maintain her income level. (Id. ¶ 13.) Defendant reduced plaintiff's hours and rescheduled her to work on weekends when it knew that plaintiff taught dance on the weekends. (Id.) Other non-disabled employees were available to work on weekends. (Id.) Plaintiff alleges that defendant

2

intentionally took these actions in an effort to force her to quit because it did not want to accommodate her injury. (Id.)

Defendant also began to schedule more than five echo exams in a day. (Id. ¶ 14.) Plaintiff alleges that defendant retaliated against her for opposing performing more than five echo exams per day by wrongfully suspending her, giving her false negative write-ups and performance reviews, and terminating her. (Id. ¶ 15.) Plaintiff also alleges that defendant refused to engage in the interactive process to determine the nature and extent of plaintiff's disability and her input on other reasonable accommodations before she was terminated. (Id. ¶ 16.)

On September 24, 2008, plaintiff filed her First Amended Complaint, alleging claims for (1) discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) discrimination on the basis of disability in violation of the Fair Employment and Housing Act ("FEHA"); (3) failure to provide reasonable accommodation on the basis of disability in violation of FEHA; (4) failure to engage in the interactive process so as to identify and provide a reasonable accommodation for a disability in violation of FEHA; (5) retaliation on the basis of disability in violation of FEHA; (6) wrongful termination in violation of public policy; and (7) defamation per se. (FAC.) Plaintiff also seeks punitive damages. (FAC, Prayer for Judgment ¶ 3.)

**STANDARD**

**A.   Motion to Dismiss**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of

3

every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1973 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

**B.   Motion to Strike**

Federal Rule of Civil Procedure 12(f) enables the court by motion by a party or by its own initiative to "order stricken

4

from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The function of a 12(f) motion is to avoid the time and expense of litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (2d ed. 1990). Rule 12(f) motions are generally viewed with disfavor and should not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the litigation. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996); Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996).

**ANALYSIS**

**A.   Motion to Dismiss**

Defendant moves to dismiss plaintiff's complaint on the basis that she fails to allege "specific facts" demonstrating that she is entitled to relief. Specifically, defendant consistently asserts that plaintiff has not pled sufficient facts to establish a prima facie case and characterizes plaintiff's allegations in the light most unfavorable to the pleader. As such defendant's motion is wholly without merit.

Plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2); Swierkiewicz, 534 U.S. at 508. "[U]nder a notice pleading system, *it is not appropriate to require a plaintiff to plead facts establishing a prima facie case.*" Swierkiewicz, 534 U.S. at 511 (emphasis added). Rather, the complaint must simply "'give the defendant fair notice of

5

what the plaintiff's claim is and the grounds upon which it rests.'" Id. at 512 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The liberal notice pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. Further, the court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Schermerhorn, 373 U.S. at 753 n.6.

### 1. Individual Actors

Defendant first asserts that plaintiff's complaint is insufficient because she fails to allege individual actors. Defendant Barton was plaintiff's employer. Plaintiff alleges that defendant, *inter alia*, discriminated and retaliated against plaintiff on the basis of her disability by giving her false negative performance reviews, refusing to accommodate her disability, harassing her, and eventually terminating her employment. Plaintiff specifically identifies one individual actor, Tim Gilliam, in her complaint. Given the nature of plaintiff's allegations and the relationship of the unnamed individual actors to defendant corporation, the complaint sufficiently gives defendant notice of plaintiff's claims against it and the grounds upon which it rests. As such, defendant's argument fails.

### 2. ADA Claim

Defendant next asserts that plaintiff's ADA claim should be dismissed because she fails "to allege specific facts creating a prima facie case under the ADA." (Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss and Mot. to Strike ("Mot."), filed Oct.

6

20, 2008, at 5.) Specifically, defendant contends that the complaint is deficient because the nature, extent, and diagnosis of plaintiff's injury is not provided.

Plaintiff alleges that she has a shoulder injury that has rendered her permanently disabled. She also alleges that she is substantially limited in the major life activities of lifting, sleeping, and reaching, among others. Plaintiff further alleges that based upon this disability, her doctor wrote a note stating that she should not be allowed to conduct more than 5 echo exams a day. These factual allegations are sufficient to put defendant on notice of plaintiff's disability.[2] Contrary to defendant's assertion, the law is clear that plaintiff need not plead facts establishing a prima facie case. Swierkiewicz, 534 U.S. at 511. As such, defendant's argument fails.

   **3.   FEHA Claims**

      **a.   Disability Discrimination**

Similarly, defendant asserts that plaintiff's FEHA disability discrimination claim should be dismissed because she has failed "to allege specific fact creating a prima facie case." (Mot. at 6.) Specifically, defendant asserts that while plaintiff has alleged that she has a shoulder injury that renders her disabled and impairs her ability to lift, sleep, and reach,

/////

---

[2] Defendant's reliance on the United States District Court for the District of Kansas's opinion in Sprague v. Kasa Indus. Controls, Inc., 250 F.R.D. 630 (D. Kan. 2008), is unavailing. In Sprague, plaintiff's complaint merely provided a formulaic recitation of the definition of disability under the ADA. Conversely, in this case, plaintiff has set forth factual allegations regarding her disability sufficient to put defendant on notice of the basis for her claim.

7

plaintiff has not provided facts as to "exactly how they are impaired or to what degree." (Id. at 7) (emphasis in original).

Again, defendant completely disregards the well-established liberal notice pleading standard in federal court and Supreme Court precedent that expressly provides that plaintiff need not plead facts establishing a prima facie case. Fed. R. Civ. Proc. 8(a)(2); Swierkiewicz, 534 U.S. at 511. As set forth above, plaintiff has pled facts sufficient to put defendant on notice of the claimed disability arising out of her shoulder injury. Plaintiff is not required to do more under Rule 8(a). Therefore, defendant's argument fails.

### b.  Reasonable Accommodation

Defendant also asserts that plaintiff's claim under FEHA based upon its alleged failure to provide reasonable accommodation should be dismissed because plaintiff admits that defendant accommodated her alleged disability and she never alleges that her disability was not accommodated.

Plaintiff alleges that from May 2007 to January 2008, defendant accommodated her disability. However, plaintiff alleges that after that time, she was (1) pressured to perform more than the 5 echo exams per day, (2) written up for refusing to perform more, (3) suspended for refusing to perform more; (4) falsely given negative performance reviews and evaluations for refusing to perform more; and (5) was eventually terminated for refusing to perform more. Viewing the allegations in the complaint in the light most favorable to plaintiff and drawing all reasonable inferences therefrom, these allegations are sufficient to state a claim that defendant failed to reasonably

accommodate plaintiff's disability.  Thus, defendant's argument fails.

### c. Interactive Process

Defendant next asserts that plaintiff's claim based upon Barton's alleged failure to engage plaintiff in the interactive process should be dismissed because plaintiff does not allege facts demonstrating that (1) defendant did not give her reasonable accommodations; and (2) defendant did not engage in the interactive process.

As set forth above, plaintiff has alleged sufficient facts to state a claim that defendant failed to reasonably accommodate her disability.  Plaintiff has also alleged sufficient facts that defendant failed to engage in the interactive process.  In particular, plaintiff alleges that defendant refused to acknowledge her doctor's restrictions and reprimanded and disciplined her for refusing to do more than her doctor's restrictions.  Plaintiff also alleges that Gilliam complained that she had a "very strict interpretation of her work restrictions" and that plaintiff's insistence that defendant honor her restrictions "compromised Barton's ability to provide . . . care."  (FAC ¶ 44.)  Further, plaintiff alleges that defendant unilaterally decided that plaintiff should no longer be accommodated and refused to speak with plaintiff to determine whether she still required accommodation.  Taking the allegations in the complaint as true and drawing all reasonable inferences therefrom, these allegations are sufficient to state a claim that defendant did not engage in the interactive process with
/////

plaintiff to identify a possible reasonable accommodation.  As such, defendant's argument fails.

### d.   Retaliation

Defendant further asserts that plaintiff's retaliation claim should be dismissed because plaintiff does not allege dates for the events in her complaint or identify what actions she considers to be retaliatory.

Contrary to defendant's assertion plaintiff provides sufficient dates and chronology to give defendant notice of the factual basis for her retaliation claim.  Plaintiff alleges that on February 1, 2008, she complained to Gilliam that defendant was not accommodating her disability and she was terminated on or about April 3, 2008.  (FAC ¶¶ 51, 62.)  As such, a reasonable inference can be drawn that the retaliatory actions occurred after February 1, 2008 and culminated in her termination on April 3, 2008.  Plaintiff also specifically alleges that defendant retaliated against her by wrongfully suspending her, giving her false negative write-ups and performance reviews, and terminating her.  (FAC ¶ 15.)  Because these allegations sufficiently give defendant Barton notice of the basis for plaintiff's claim, defendant's argument fails.

### 4.   Wrongful Termination

Defendant also asserts that plaintiff's wrongful termination in violation of public policy claim must be dismissed because this claim is based upon defendant's alleged violation of the ADA and FEHA, which defendant asserts have not been adequately pled. However, because as set forth above, plaintiff has sufficiently
/////

alleged claims for violations of the ADA and FEHA, defendant's argument for dismissal of this claim also fails.

### 5. Defamation Per Se

Finally, defendant argues that plaintiff's defamation per se claim must be dismissed because (1) Barton's performance evaluation of plaintiff cannot form the basis of a claim for defamation per se; and (2) Barton's alleged comment that plaintiff was a "pole dancer" is not actionable.

#### a. Performance Evaluation

Defendant argues that plaintiff's claim for defamation per se must be dismissed to the extent it arises out of statements made in a performance evaluation because such statements are non-actionable communication of opinion.

To state a claim for defamation, plaintiff must show the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage. Smith v. Maldonado, 72 Cal. App. 4th 637 (1999). A statement of opinion "cannot be false and is outside the meaning of libel." Tschirky v. Superior Court, 124 Cal. App. 3d 534, 539 (1981). In determining whether a statement is fact or opinion, "[t]he court examines the communication in light of the *context* in which it was published." Jensen v. Hewlitt-Packard Co., 14 Cal. App. 4th 958, 970 (1995). "The court must look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed." Campanelli v. Regents, 44 Cal. App. 4th 572, 578 (1996). Ultimately, "[t]he dispositive question is whether a reasonable fact finder could conclude that the

11

published statements imply a provably false factual assertion." Id. (internal quotations omitted).

Generally, performance evaluations are statements of opinion. Id. at 965. "[U]nless an employer's performance evaluation falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics, it cannot support a cause of action for libel." Jensen v. Hewlitt-Packard Co., 14 Cal. App. 4th 958, 965 (1995). "Even if they are objectively unjustified or made in bad faith, publications which are statements of *opinion* rather than fact cannot form the basis for a libel action." Campanelli, 44 Cal. App. 4th at 578 (emphasis in original).

At this stage in the litigation, the court cannot hold as a matter of law that the alleged defamatory statements are inactionable communications of opinion. First, contrary to defendant's assertion, plaintiff's allegations do not reference a performance evaluation, but rather a "Disciplinary Action Notice." (FAC ¶ 62.) The court cannot discern from the allegations in the complaint the nature and circumstances of the communication; for example, it is not clear who the intended primary recipient of the notice is or the purpose to be served by it. Cf. Jensen, 14 Cal. App. 4th at 964 ("The performance review is a vehicle for informing the employee of what the management expects, how the employee measures up, and what he or she needs to do to obtain wage increases, promotions or other recognition. Thus, the primary recipient and beneficiary of the communication is the employee."). Second, plaintiff's defamation claim arises out of statements in the "Disciplinary Action Notice," which

12

include, but are not limited to, statements that plaintiff exhibited "continued behavior that is disrespectful to coworkers." (FAC ¶ 62.) As such, while the allegations in the complaint are sufficient to put defendant on notice of the claim against it and the grounds upon which it rests, such allegations are insufficient for the court to determine what precisely the alleged defamatory statements are and whether such statements are inactionable as a matter of law.[3]

### b. "Pole Dancer"

Defendant also argues that plaintiff's claim for defamation per se must be dismissed to the extent it arises out of the statement that plaintiff was a "pole dancer" in her spare time. Defendant asserts that this statement is inactionable as a matter of law and that plaintiff has failed to allege which specific individual at Barton made this statement.

A claim for defamation per se may arise, *inter alia*, from statements that impute a want of chastity to a person or which, by natural consequence, causes actual damage. Cal. Civ. Code § 46. An action for defamation serves to protect the personal reputation of the injured party. Polygram Records, Inc. v. Superior Court, 170 Cal. App. 3d 543, 549-50 (1985); see In re

---

[3] To the extent defendant argues that plaintiff fails to allege facts supporting publication, defendant's argument also fails. Plaintiff alleges facts supporting a theory of compelled republication. See Live Oak Publ'g Co. v. Cohagan, 234 Cal. App. 3d 1277, 1285 (1991) (noting that in the employment context, a plaintiff may have a strong compulsion to republish wrongful grounds for termination to prospective employers in order to explain away negative inferences that will be learned through investigation of the plaintiff's prior employment); see also McKinney v. County of Santa Clara, 110 Cal. App. 3d 787, 796 (1980).

1  Peck, 295 B.R. 353, 360 (9th Cir. BAP 2003); Semple v. Andrews,
2  27 Cal. App. 2d 228, 232 (1938) (noting that the definition of
3  slander set forth in § 46 is "very broad" and "has been held to
4  include almost any language which, upon its face, has a natural
5  tendency to injure a person's reputation, either generally or
6  with respect to his occupation").  In determining whether a
7  statement is slanderous, the communication must be considered as
8  a whole and "must be construed not only from the expressions used
9  but from the whole scope and apparent object of the person making
10 the statement."  Correia v. Santos, 191 Cal. App. 2d 844, 851
11 (1961) (internal quotations and citations omitted).  "[N]ot only
12 is the language employed to be regarded with reference to the
13 actual words used, but according to their sense and meaning,
14 under all the circumstances."  Id.; see also MacLeod v. Tribune
15 Publ'g Co., Inc., 52 Cal. 2d 536, 549 (1959) ("Language may be
16 libelous on its face even though it may be susceptible of an
17 innocent interpretation. . . . The language use may give rise to
18 conflicting inferences as to the meaning intended, but . . . it
19 is reasonable to assume that at least some of the readers will
20 take it in a defamatory sense.").
21      In this case, plaintiff alleges that defendant made
22 statements that she was a pole dancer, knowing that these
23 allegations were false.  Viewing the allegations in the complaint
24 as true and construing them in the light most favorable to
25 plaintiff, plaintiff has sufficiently alleged defamatory
26 statements that would tend to convey to listeners that she was
27 unchaste or that would otherwise injure her reputation generally.
28 See Schomer v. Smidt, 113 Cal. App. 3d 828, 835 (1980) ("To state

14

that one carries on sexual conduct be it alone, with members of the opposite or similar sex imputes to them a 'want of chastity,' which in the eyes and minds of their peers might and could subject them to disgrace, ridicule, damage to reputation, lacking virtue or reliability."); Kedrolivansky v. Niebaum, 70 Cal. 216, 218 (1886) ("Charges of unchaste conduct are seldom made in plain and direct words. . . . [H]owever made, [they] are slanderous when they convey to the minds of the hearers the meaning that the woman was unchaste."). As such, at this stage in the litigation, the court cannot find that the alleged statements are not actionable as a matter of law.

Plaintiff also alleges that this statement was made to Joy Reese, a claims specialist for plaintiff's disability benefits, in approximately March 2008. While plaintiff does not identify the individual who communicated this statement on behalf of defendant, these allegations are sufficient to put Barton on notice of the claim against it and the grounds upon which it rests. As such, defendant's argument fails.

**B.   Motion to Strike**

Defendant moves to strike plaintiff's claim for punitive damages on the grounds that (1) plaintiff fails to allege conduct by a director, officer, managing agent, or managerial employee; and (2) plaintiff fails to allege specific facts constituting oppression, fraud, malice, or reckless indifference.

Viewing the allegations in the complaint as true and drawing all reasonable inferences therefrom, plaintiff sufficiently alleges conduct by officers, directors, or managing agents. Plaintiff identifies Gilliam as a specific individual actor who

15

allegedly discriminated and/or retaliated against her.  At this stage of the litigation, where the court must view the allegations in the light most favorable to the plaintiff, a reasonable inference may be drawn that Gilliam was an officer, director, or managing agent.  Further, plaintiff alleges that she was harassed, suspended, and ultimately terminated by defendant. A reasonable inference may be made that those actions were taken by officers, directors, or managing agents of defendant. Finally, plaintiff alleges that, upon information and belief, all of the alleged wrongful acts were ratified by defendant's officers, directors, and managing agents.  (FAC ¶¶ 24, 33, 40, 47, 54, 60, 68.)  As such, defendant's argument that plaintiff has not sufficiently alleged conduct by a director, officer, managing agent, or managerial employee fails.

     Plaintiff also alleges that the alleged wrongful acts were committed maliciously, fraudulently, oppressively, and in bad faith.  (FAC ¶¶ 24, 33, 40, 47, 54, 60, 68.)  "In federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent."  Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016, 1019 (S.D. Cal. 2000); see Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1184 (E.D. Cal. 2005); Clark v. State Farm Mut. Auto. Ins. Co., 231 F.R.D. 405, 406 (C.D. Cal. 2005).  As such, defendant's argument that plaintiff

/////
/////
/////
/////

must plead specific facts to support these allegations is without merit.[4]

Accordingly defendant's motion to strike plaintiff's claim for punitive damages is DENIED.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss and motion to strike are DENIED.

IT IS SO ORDERED.

DATED: December 15, 2008

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[4] To the extent defendant contends that punitive damages are precluded because Barton did accommodate plaintiff's alleged disability, such argument fails for the reasons set forth above.

17