UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SUSAN REESE,

        Plaintiff,

  v.

BARTON HEALTHCARE SYSTEMS,

        Defendant.
_____/

NO. CIV. S-08-1703 FCD GGH

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter is before the court on defendant Barton Healthcare Systems' ("defendant" or "Barton") second motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Susan Reese ("plaintiff" or "Reese") opposes the motion. For the reasons set forth below,[1] defendant's motion is DENIED.

/////

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L.R. 230(g).

# BACKGROUND

This case arises out of plaintiff's claims that she was terminated as a result of her disability and for asserting that her disability was not being accommodated by defendant. On October 9, 2009, six months prior to the discovery deadline, defendant filed a motion for summary judgment, which the court continued in order to allow plaintiff to receive a request for production of documents and to conduct various depositions. On March 3, 2010, the court issued a Memorandum and Order, denying defendant's motion for summary judgment on all of plaintiff's claims.

On July 6, 2010, defendant filed a second motion for summary judgment after conducting the depositions of plaintiff's treating physicians, plaintiff's supervisor, and plaintiff's Worker's Compensation evaluating physician. Defendant contends that these depositions revealed new evidence that justifies entry of summary judgment.[2]

/////

/////

---

[2] Unless otherwise noted, the facts herein are undisputed. (See Def.'s Reply to Pl.'s Response to Statement of Undisputed Facts in Supp. of 2d Mot. for Summ. J. ("UF") [Docket #64-3], filed July 30, 2010.) Where the facts are disputed, the court recounts plaintiff's version of the facts. (See Pl.'s Separate Statement of Disputed Facts ("DF") [Docket #55], filed July 23, 2010.)

The court notes that a majority of the facts are the same as those previously presented to the court on defendant's first motion for summary judgment. As such, the court incorporates the background facts from its Memorandum and Order filed March 3, 2010. The court only recounts the "new evidence" obtained from the four depositions taken after the court issued its prior order.

**A.    Medical Evidence**

    **1.    Randy C. Watson, M.D.**

    Randy C. Watson, M.D. ("Watson") first treated plaintiff on September 10, 2007. (Dep. of Randy C. Watson, M.D. ("Watson Dep."), at 13; see Ex. 1 to Watson Dep.) Based upon plaintiff's own assessment that the pain in her shoulder got worse towards the end of the day and much worse when she performed over five echocardiograms ("echo tests") a day, Watson created a treatment plan to treat her with careful observation and put her on a restriction of doing five echo tests a day. (Watson Dep. at 14, 17-18.) On October 22, 2007, plaintiff told Watson that the pain in her shoulder was better because she had restricted her activities at work as recommended. (Watson Dep. at 20.) Similarly, on February 11, 2008, plaintiff told Watson that her shoulder and neck were "a little better"; Watson testified that the number of echo tests did not seem to be a problem because plaintiff told him she was conducting fewer exams due to scheduling of a traveling technician. (Ex. 8 to Watson Dep.; Watson Dep. at 37.) At this point, both plaintiff and Watson agreed that performing five echo tests a day was appropriate because plaintiff indicated that she was willing and able to tolerate any pain associated with that number of exams. (Watson Dep. at 37-38.) Finally, on her last exam with Dr. Watson before her termination, performed on March 31, Watson reported that the restriction on echo exams appeared to have helped with the pain. (Watson Dep. at 40.) The report also noted that plaintiff's work hours had been cut back and that she received a smaller paycheck as a result of the reduction in hours. (Id.)

1      On April 9, 2008, after she had been terminated on April 3,
2 2008, plaintiff had another exam with Watson, where he reported
3 that her symptoms have gotten much worse.  (Watson Dep. at 41.)
4 Watson noted that on April 1, plaintiff had reported increased
5 pain in both shoulders, along with headaches and neck pains.  The
6 headache and neck pain persisted the next day, April 2.  After
7 she went back to work, plaintiff called to see if she could get
8 an off work note, but was told she needed to come in for an
9 evaluation, which she did on April 9.  (Id. at 42.)  Watson
10 testified that based upon her physical condition on April 9,
11 2010, had plaintiff not been terminated, he would have
12 recommended that she not work for at least two weeks from the
13 date of the visit.  (Id. at 46.)  Subsequently, on April 23,
14 2008, Watson testified that she had not made any improvement and
15 recommended that she continue the off work status.  (Id. at 47.)
16      On April 9, 2008, Watson completed a disability form on
17 plaintiff's behalf, stating that plaintiff was incapable of
18 performing her customary occupation.  (Id. at 52-53.)  This same
19 information was submitted again on May 27, 2008, and ultimately,
20 Watson recommended that plaintiff's off work status be continued
21 until September 1, 2008 because of continued pain and weakness.
22 (Id. at 54-55.)  However, Watson testified that he never
23 considered nor discussed with plaintiff whether she could return
24 to work with a restriction on the number of echo tests she
25 performed because "it was a moot point" as a result of her
26 termination in April 2008.  (Id. at 56.)  As such, Watson did not
27 include such a determination in his reports.  (See id.)
28 /////

4

**2.  Michael Patrick Sullivan, M.D.**

Michael Patrick Sullivan, M.D. ("Sullivan") is plaintiff's Neurologist and has treated her since January 11, 2008. (Decl. of Michael P. Sullivan in Supp. of Opp'n to Mot. for Summ. J. ("Sullivan Decl."), filed July 23, 2010, at 1.)  In a Physician's Supplementary Certificate submitted to the Employment Development Department in support of continuing plaintiff's disability benefits, Sullivan noted that plaintiff was unable to sustain the postures needed to work as an echo tech. (Dep. of Michael Patrick Sullivan, M.D. ("Sullivan Dep.") at 64-65.)  Sullivan further testified that as of April 2009, there had been no change in her condition that would suggest she could return to work. (Id. at 71.)  However, Sullivan also noted that plaintiff thought she could perform limited echo tests, but that such a position was not available. (Id. at 72.)  Further, in his declaration, Sullivan states that if plaintiff were permitted to continue to perform no more than five echo tests a day, she could work there long term. (Sullivan Decl. at 3.)[3]

**3.  J. Conrad Clifford, M.D.**

J. Conrad Clifford, M.D. ("Clifford") is a worker's compensation evaluator who evaluated plaintiff in January 2010.

---

[3] Defendant objects to the Sullivan declaration, asserting that it contradicts his deposition testimony. See Block v. Los Angeles, 253 F.3d 410, 419 n.2 ("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting the earlier version of the facts."). However, Sullivan was never questioned regarding whether plaintiff could perform work as an echo technician with restrictions on the number of echo exams performed in a day. At most, Sullivan testified that he discussed this possibility with plaintiff, but that no such positions were available. As such, defendant's objections are OVERRULED.

5

(Dep. of J. Conrad Clifford, M.D. ("Clifford Dep.") at 7-8.) Clifford spent approximately four hours reviewing medical records and forty minutes with plaintiff. (Id. at 8.) He testified that he believed that if plaintiff continued work as an echo technician, it would likely worsen her condition and that, unless changes could be made in the work, she should not continue for fear of greater injury and increasing pain. (Id. at 16.) However, he also testified that it would be possible for plaintiff to return to work if the work could be modified to conducting between two and three exams per day. (Id. at 20.)

**B.   Other Factual Evidence**

Timothy Gilliam ("Gilliam"), one of plaintiff's supervisors, testified that plaintiff's schedule was changed and she was subsequently terminated for legitimate non-discriminatory reasons. (UF ¶ 2.) With respect to the change in her schedule, Gilliam asserts that additional echo technicians were hired and trained in order to provide services seven days a week. (UF ¶ 7.) He contends that plaintiff's schedule was changed because the traveling echo technician would cost more on the weekends and because it would ensure that plaintiff remained in her range of five echo tests per day, as there were expected to be fewer tests on weekends. (UF ¶¶ 8-9.)

With respect to her termination, Gilliam testified that plaintiff was terminated based on performance issues. Specifically, he asserts that plaintiff failed to orient the traveling technician because she left early and, on at least one occasion, locked equipment manuals in the drawer when she had only the key. (UF ¶ 2; Dep. of Timothy Gilliam ("Gilliam Dep."),

6

at 84-85.)  He asserts that she "just wasn't being a real team player."  (Gilliam Dep. at 87.)  He also asserts that plaintiff was repeatedly criticized for her lack of interpersonal skills and was disciplined for abandoning her patients, abandoning her work station, insubordination, and inappropriate behavior with a patient.  (UF ¶ 3.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must be viewed in the light most favorable to the nonmoving party.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp., 477 U.S. at 325.

/////

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Ninth Circuit has expressly held that "district courts have discretion to entertain successive motions for summary judgment." Hoffman v. Tonnemacher, 593 F.3d 908, 911 (9th Cir. 2010). Indeed, Federal Rule of Civil Procedure 56(c) provides that, unless a different time is set by local rule or court order, "a party may move for summary judgment *at any time* until 30 days after the close of all discovery." Moreover, "the denial of a summary judgment does not preclude a contrary later grant of summary judgment," and allowing a party to file a second, non-repetitive motion for summary judgment "fosters the just, speedy, and inexpensive resolution of suits." Hoffman, 593 F.3d at 911 (internal quotations omitted). Further, a successive motion is particularly appropriate on an expanded factual record. Id.

**ANALYSIS**

**A.   Qualified Individual**

Defendant moves for summary judgment on plaintiff's ADA and FEHA claims on the grounds that plaintiff cannot demonstrate that

8

she is a qualified individual under the statute. Specifically, in this motion, defendant contends that plaintiff is not capable of performing the essential functions of her job with or without reasonable accommodation.[4]

To state a claim for discrimination under the ADA, a plaintiff must establish that he or she is a "qualified individual." 42 U.S.C. § 12112(a). "Qualification for a position is a two-step inquiry." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 990 (9th Cir. 2007) (en banc). First, the court must determine "whether the individual satisfies the 'requisite skill, experience, education and other job-related requirements' of the position." Id. (quoting 29 C.F.R. § 1630.2(m)). Second, the court must consider "whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation." Id. (quoting 42 U.S.C. § 12111(8)). Defendant does not challenge the first inquiry.

In general, the "term essential functions means the fundamental job duties of the employment position the individual with the disability holds or desires." 29 C.F.R. § 1630.2(n).

---

[4] In its first motion for summary judgment, defendant asserted that plaintiff was not a qualified individual because she is not substantially limited in a major life activity and because the essential functions of plaintiff's position required her to be able to handle as many echo exams as were scheduled throughout the day. The court concluded that defendant was not entitled to summary judgment with respect to either of these theories. Specifically, with respect to the essential functions of the job, the court held that it could not conclude on the evidence before it that handling more than five echo exams a day was an essential function of the job. Indeed, plaintiff presented evidence that she often was required to perform less than that.

It does not include the marginal functions of the positions. Id. A function may be essential if (1) the position exists to perform that function; (2) there is a limited number of employees available among whom the performance of that function can be distributed; or (3) it requires specialized expertise or ability to perform. Id. Further, "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

However, the Ninth Circuit has cautioned that "[a] highly fact-specific inquiry is necessary to determine what a particular job's essential functions are." Cripe v. City of San Jose, 261 F.3d 877, 888 n.12 (9th Cir. 2001). An employer's assertions regarding what it considers an essential function of the job "does not qualify as an undisputed statement of fact in the context of a motion for summary judgment." Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1175 n.6 (9th Cir. 1998); Lazcano v. Potter, 468 F. Supp. 2d 1161, 1167-68 (N.D. Cal. 2007).

In this case, plaintiff presents evidence that she could perform the essential functions of her job with a reasonable accommodation. Specifically, Sullivan, her current neurologist and treating physician, declared that if plaintiff were permitted to continue to perform no more than five echo tests a day, she could work there long term. Moreover, Clifford, plaintiff's worker's compensation evaluator, testified that it would be possible for plaintiff to return to work if the work could be modified to conducting between two and three exams per day.

10

While Watson concedes that he completed forms stating that plaintiff was incapable of performing her customary occupation, he also testified that he never considered nor discussed with plaintiff whether she could return to work with a restriction on the number of echo tests she performed because "it was a moot point" as a result of her termination in April 2008.

Accordingly, defendant's motion for summary judgment on the basis that plaintiff was not capable of performing the essential functions of the job is DENIED.

**B.     Legitimate, Non-Discriminatory Reasons**

Defendant also moves for summary judgment on plaintiff's ADA and FEHA claims because it asserts, as it did in its first motion for summary judgment, that Barton changed her working hours, suspended her, and terminated her for nondiscriminatory reasons. Specifically, defendant asserts that plaintiff's hours were changed due to an overall plan implemented in response to complaints from doctors and patients regarding the time it was taking to complete echo exams.  Barton contends that in furtherance of this overall plan, it hired an additional echo technician and began scheduling plaintiff to work weekends, which had the overall effect of reducing her hours.  Defendant also asserts that it suspended her on January 28, 2008 for abandoning patients after plaintiff became upset and left work early due to a conversation with a supervisor regarding changes to her work schedule to accommodate her work restrictions.  Finally, defendant asserts that it terminated plaintiff based upon insubordination and longstanding problems interacting appropriately with management, co-workers, and patients.

11

1    Defendant asserts that the testimony of Tim Gilliam
2 demonstrates that its decisions were legitimate and non-
3 discriminatory because he testified as to his reasons for
4 changing plaintiff's schedule and terminating her employment.
5 Defendant previously offered these same reasons with similar
6 evidence in support of its first motion for summary judgment.
7 However, the court concluded that plaintiff had presented
8 sufficient evidence to demonstrate that defendant's proffered
9 legitimate, non-discriminatory reasons for termination were
10 pretext for unlawful discrimination in violation of the ADA.
11 Specifically, plaintiff presented evidence that (1) her
12 accommodation was not the sole cause, if at all, of the delays;
13 (2) her suspension for abandoning patients was motivated by
14 defendant's frustration with her requested accommodation, not her
15 conduct; (3) defendant's proffered reasons for termination were
16 not wholly supported by her work history; and (4) defendant was
17 repeatedly hostile to her requested accommodations.  While
18 Gilliam's deposition testimony may add more evidence to
19 defendant's theories and explanation, it does not invalidate the
20 evidence proffered by plaintiff that the court previously found
21 sufficient to demonstrate pretext.
22    Accordingly, for the same reasons defendant's original
23 motion was denied, defendant's second motion for summary judgment
24 on the basis that plaintiff's hours were changed and she was
25 terminated for legitimate, non-discriminatory reasons is DENIED.
26 **C.   Punitive Damages**
27    Finally, defendant again moves to strike plaintiff's claim
28 for punitive damages on the grounds that defendant did not act

12

maliciously, with reckless indifference, nor with oppression or fraud. Under the ADA, "[a] complaining party may recover punitive damages . . . if [she] demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Under California law, a plaintiff may only recover exemplary damages where she has proven by clear and convincing evidence that the defendant acted with oppression, fraud, or malice. Cal. Civil Code § 3294.

As set forth above and in the court's prior memorandum and order, plaintiff has presented evidence that her hours were reduced, she was suspended, and she was ultimately terminated because of her disability. Plaintiff has also presented evidence that defendant made hostile comments about her disability and attempted to shame her into performing more echo exams than set forth in her doctor's recommendation. Finally, plaintiff presented evidence that (1) defendant published the false, pretextual reasons for her discrimination in a Disciplinary Action Notice it knew plaintiff would be compelled to republish to prospective employers; and (2) a Barton employee called plaintiff a "pole dancer" during a worker's compensation investigation. While defendant may dispute plaintiff's evidence, a determination of the strength and credibility of the evidence is left to the trier of fact at trial, not to the court on a motion for summary judgment. Therefore, defendant's motion to strike plaintiff's claim for punitive damages is DENIED.

/////

**CONCLUSION**

For the foregoing reasons, defendant's second motion for summary judgment is DENIED.[5]

IT IS SO ORDERED.

DATED: August 18, 2010

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Defendant also requests that this court set forth any facts that have been established, including issues of front or back pay. However, defendant has presented no evidence with respect to front or back pay. Further, the court does not undertake to review evidence or issues not specifically raised by the parties in this motion.

Plaintiff requests sanctions in the amount of $10,600, the amount of attorneys' fees incurred in preparing her opposition to defendant's second motion for summary judgment. However, plaintiff does not identify the legal basis or standard for such sanctions. To the extent plaintiff relies on the court's inherent power to issue sanctions, the court cannot conclude on the record before it that defense counsel's conduct in filing a second unsuccessful motion for summary judgment "'constituted or was tantamount to bad faith.'" Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) (quoting Roadway Express, Inc. v. Piper, 447 Ua.S. 752, 767 (1980)). Accordingly, plaintiff's request is DENIED.

14